No. 37.—BENJAMIN CAMERON, BENJAMIN D. JOHNSON and WILLIAM A. SPEAR, plaintiffs in error vs. STEPHEN WARD, defendant in error.

[1.] The bill of exceptions must show that the decisions complained of as erroneous, were actually made by the Court, and the only proof of the fact is the Judge's certificate.

Cameron et al. vs. Ward.

[2.] The presumption is that the judgments of the Superior Courts are right, and the onus is upon the plaintiff in error, to make it appear otherwise.

[3.] When the fact appears only in a *rule nisi* for a new trial, that the Court refused to charge as requested, and the rule is disallowed by the Court, without stating the grounds, it is no evidence of the fact thus assumed, especially when the judge, in the bill of exceptions, certifies that he gave the charge recited in the motion, but is silent as to his refusal to charge.

[4.] When C. & J. advance money to C. to pay for land bought of him by W. and take the title to themselves, to secure the re-payment of the sum thus advanced, and a time is stipulated for the re-payment, with the stipulation that, on default of W., the land may be sold to reimburse the lenders, it is sufficient if W. tender the money at any time before the land is sold and paid for, especially if the purchaser know of the pre-existing equities between the parties.

[5.] Whether an agent be drunk or sober, in the opinion of witnesses, still, if he execute with fidelity and skill the business entrusted to him, and his principal does not complain, it is not competent for the other party, with whom he deals, to do so.

In Equity, from Troup Superior Court. Tried before Judge Hammond, November Term, 1856.

This was a bill filed by Stephen Ward, the defendant in error, against Benjamin Cameron and Benj. D. Johnson and William A. Spear, plaintiffs in error. The bill alleges that complainant, in the year 1835, bought lot of land No. 2, in the 11th district of Troup county, at the price of $750 from one Thomas Walker; that Walker had purchased it from the drawer in the year 1832; that complainant, immediately after his purchase, went into possession, made valuable improvements, and continued in possession until the latter part of the year 1847. Sometime in this year (1847,) complainant learned that said lot of land had been recently granted to one John J. Whitaker, by reason of the same not having been previously granted, and that said Whitaker had sold the same to Compton, the Surveyor General: That complainant went on to Milledgeville in November, 1847, to ascertain fully the condition of the title, and if possible to secure his land, without the expence of a law suit; that it was during the session of the Legislature, and he conversed and advised fully with Cameron and Johnson—the former a rep-

resentative from the county of Troup, and the latter the Senator from Troup and Heard,—about the situation of the title; that Compton agreed that if complainant would pay him $200, he would make him a deed to the land, and thus at once and forever end the controversy. Complainant not having the money with him, communicated the facts to his friends Cameron and Johnson, who agreed to let him have the money, or to pay it for him, and take the title from Compton to themselves, and that upon their return home from Milledgeville and the re-payment of the money to them by complainant, they would convey said land to him. This arrangement was effected and, without reducing said agreement to writing, Cameron and Johnson paid the said sum of $200 and received a deed for said lot to themselves, and in their own names. Complainant finding that he had some money to spare, paid them the sum of twenty dollars, and agreed to refund the balance, being $180, with interest thereon, in a short time after their return from Milledgeville, which it was thought would be about Christmas; that desiring to comply promptly with his contract, and not wishing to disappoint his friends, he borrowed the money before Christmas and sent it by a friend to Cameron, but he not having returned from Milledgeville, the same was not paid to him; that shortly afterwards complainant was taken sick and wrote to Cameron informing him of his illness, and that he would bring or send the money in a very short time ; that continuing unwell, about the 1st of February, 1848, and not more than a month after their return from Milledgeville, he sent the money to them by one Archibald Wilkerson, who went to Cameron and advised him that he had brought from complainant the money to pay him the amount advanced for the land; when said Cameron informed him that Johnson had sold the land to William A. Spear, and that consequently he could not receive the money nor execute a deed to complainant for the land ; that said Wilkerson also called on Johnson and tendered him the amount advanced with interest, which

Johnson likewise refused to receive, and acknowledged that it was out of his power to convey the land to Ward, he having sold and conveyed the same to William A. Spear; that complainant, when informed of the conduct of said defendants, was reluctant to believe that men enjoying so much of the public confidence and professing so much friendship for him, would forfeit their plighted faith, and went himself to see them upon the subject; that said defendants refused to come to any terms or make any arrangement by which complainant could save his land, worth a thousand dollars, or to pay him for the same. The bill prays for such relief as the nature and circumstances of the case required, and especially, that Cameron and Johnson be decreed to pay him the sum of one thousand dollars, the value of said land, with interest thereon from 1st January, 1848.

Defendants Cameron and Johnson demurred to the bill for want of equity, which was overruled by the Court.

They then filed their separate answers and admit that the facts relating to complainant's visit to Milledgeville, and his negotiation and trade with Compton, and their advancing the sum of $200 for him, as stated in the bill, are true ; but they deny having received the twenty dollars alleged to have been paid to them, and they set up and insist that the said sum of two hundred dollars, advanced by them, was to be repaid to them on their return home about Christmas, and in the event that this was not promptly done, they were to sell the land and thus at once realize the sum paid out by them ; that having waited sometime on complainant after their return from Milledgeville, and not hearing from him, and needing very much the money which they had advanced, that they did sell the land to said Spear for three hundred dollars, which was the best price, under the circumstances, that they could get, and that they had offered to complainant the surplus of said sale, being one hundred dollars, in a note on said Spear, who was perfectly good, and which he refused ; that they acted in the matter entirely at complain-

ant's instance and persuasion, and the *time* for the payment of the money having expired, they felt themselves under no obligation to extend indulgence, and retain the land for his benefit. They deny that any tender of the money was ever made—they admit that Wilkerson did call to see them, after the land was sold to Spear, and said something about his having the money to pay them for the land; but Johnson in his answer states that Wilkerson called upon him, and that he was so drunk that he was unfit to attend to business, and that he told him to go off and get sober and he would see him again, and try and make some arrangement about it.

They insist also upon the statute of frauds.

Spear was made a party by an amendment to the bill, who answered, that about the first week in January 1848, he heard that Johnson was offering the land for sale, and being desirous of purchasing the lot, he saw Johnson and agreed to buy it, if he could get a good title ; that about the 26th day of January, 1848, he bought said lot of land from Johnson for the sum of three hundred dollars; he most positively denies that, at the time of his purchase or before, either Johnson or Cameron had informed him of the facts charged in complainant's bill ; after the trade was made, Johnson told him that he had sold the land to reimburse himself for the money paid for Ward in Milledgeville.

Under the charge of the Court and the testimony adduced on both sides, the jury found for complainant six hundred and fifty-three dollars and thirty-six cents, ($653 36.)

Defendants made a motion for a new trial on the following grounds, to-wit:

1st. Because the Court erred in refusing to charge the jury as requested by defendants' solicitor, that in order to prevent the operation of the statute of frauds, it was necessary that they should believe from the evidence, that the defendants were guilty of a fraud or acted fraudulently in the transaction set forth in complainant's bill, and that the con-

Cameron et al. vs. Ward.

tract is not such a contract for the sale of land as the statute contemplates.

2d. Because the Court erred in charging the jury that it was competent for a person to select any person he thought proper to act as his agent, so he was not insane or a lunatic.

3d. Because the Court erred in charging the jury that although they should believe, in this case, that *time* was of the *essence* of the contract, yet, if Ward tendered the money to defendants before the land was sold, or within a reasonable time, they were bound to reconvey to complainant, or refund in damages, although the time agreed on by the parties for the payment of the money had elapsed.

4th. Because the Court erred in charging the jury that if *time* was of the *essence* of the contract, it was incumbent on the party insisting on it to prove the time.

5th. Because the Court erred in rejecting the following words of the witness, Spencer J. James in his answer to the third interrogatory, to-wit: "That he was not capable of transacting any kind of business." Also, in rejecting the following words in the answer of James Askew to the second interrogatory : "Made no tender of it, or any portion of it, to the said B. D. Johnson." Also in rejecting the following words in the same answer, to-wit : "too much so to transact any kind of business."

6th. Because the decree made by the jury is contrary to law, the charge of the Court and the testimony.

The Court refused the motion for a new trial, and defendants excepted.

OVERBY & BLAKELY; and DOUGHERTY, for plaintiffs in error.

B. H. HILL, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

A motion was made to dismiss this case, for want of a bill of exceptions.

By the 9th and last section of the Act of 1856, it is provided that the case shall be heard upon the errors as set forth in the bill of exceptions, which shall be plainly and distinctly stated. *Pamphlet Acts, p.* 201. To give to the late statute the utmost latitude of construction, we take it, that the bill of exceptions must show that the decisions complained of as erroneous, were made by the Court, and that the only proof of this fact is the Judge's certificate to this effect. In other words, it is incumbent on the plaintiff in error to make it appear affirmatively that the judgment of which he complains, was erroneous—and that, failing in this, the judgment will be affirmed. The presumption is, that the judgment is right.

In this case there was a motion for a new trial; but the *rule nisi* was overruled. The motion was predicated upon six grounds.

1st. Because the Court erred in refusing to charge the jury as requested by defendants' solicitor—which request is set forth in full.

2d. 3d. 4th. In charging the jury as therein set forth.

5th. In rejecting certain portions of the testimony of the witnesses Spencer J. James and James Askew.

6th. Because the decree of the jury was contrary to law and evidence and the charge of the Court.

A brief of the testimony, as agreed upon by counsel, accompanied the application for a new trial.

Now, the presiding Judge, in his certificate, adopts this brief of the testimony, annexed to the *rule nisi*, for a new trial, as a part of the bill of exceptions. And by a fair interpretation, we hold, that he intended thereby to say, that it contains all the evidence material to a clear understanding of the errors complained of. He also certifies that he gave the charges as set forth and stated in the motion for a new trial. But he no where states or admits that he refused to give the charge requested by the defendants' solicitor, or rejected any part of the proof offered on the trial.

Can this Court then hear and determine the errors com-

Cameron et al. vs. Ward.

plained of in these two particulars? We think not, most manifestly. And this is no technical objection. It is fundamental and vital. Suppose we were to reverse the judgment below, because the Circuit Judge had refused to charge as requested, or had ruled out a portion of the testimony of James and Askew?—might he not—might not the complainant in the Court below justly complain that we had overruled the Judge upon a matter which never transpired in the case? It may be replied, that these grounds were taken in the *rule nisi* for a new trial. True, but the Court refused to entertain this motion; and it may be, (for he does not give the reasons for his judgment,) because these very grounds were wrongfully inserted, and not true in point of fact. One thing is certain, that while the Judge adopts the brief of evidence as a part of the bill of exceptions, and certifies, expressly, that he gave the charges as set forth in the motion for a new trial, he is silent as to the complaint, that he refused to charge. And the maxim *expressio unius est exclusio alterius*, would seem to apply.

With the strong desire ever manifested by this Court, to hear cases upon their merits, and with an honest purpose to execute the laws of the Legislature, in the spirit in which they were enacted, we are compelled to restrict this bill of exceptions to the legality of the instructions given to the jury, and to the finding of the jury upon the proof, as contained in the record.

What are the facts of this case? Stephen Ward, the complainant in the bill, had purchased the lot of land in dispute, in 1835, of one Thomas Walker, for $750; that he went into immediate possession, and so continued until the latter part of 1847; that in 1835, upon inquiring of the Surveyor General, he was informed that the grant had been issued before the purchase by Walker, his grantor, of Christian Thomas, the previous owner; that not doubting but that the grant had issued from the State, he made valuable improvements upon the land; that in 1847, to his surprise, he learned that

the lot was not granted when he purchased of Walker, but had been granted to one Thomas Whitaker, under the then late law, and sold by him to Pleasant Compton; that in November, 1847, he went to Milledgeville, when Compton, under the peculiar circumstances of the case, agreed to let him have the lot for $200. That Cameron and Johnson being there as members of the Legislature, and his immediate Representatives, in whom he had entire confidence, advised him to pay the $200, and save his homestead; lacking the money, they agreed to advance it; and for their security, to take the titles in their own names, which they agreed to re-convey to him, upon being refunded their money with interest, when they returned home from Milledgeville; that having that much more money than he needed to defray his expenses, he handed them $20.

About the last of December, 1847, expecting that Cameron and Johnson had returned from the Legislature, Ward borrowed the money and sent it by a friend to Cameron; but he had not got back. That shortly after, he was taken sick; but about the first of February, 1848, he procured the money to be again carried to Cameron, who informed the messenger, A. Wilkinson, that Johnson had sold the land to one William A. Spear. It seems that this sale was unknown to Cameron, at the time it was made; that he expressed himself dissatisfied with it, and insisted that Ward should have the land; *Spear's note was given in payment;* and Cameron never signed the deed until the month of November following—long after suit had been instituted to enforce the specific performance of the contract. Cameron not only refused to unite at that time in the conveyance to Spear, but said it must be rescinded, and appealed to Johnson to that effect. Spear admitted to Stamps, before he purchased the land, that he knew of the agreement between Ward, Cameron and Johnson, and that he was to have the land, provided it was not redeemed by Ward. It is not pretended but that the only lien the defendants had on the land, was to sell and re-

imburse themselves for the money advanced to Compton for and on account of Ward. The testimony of Garhey and others, puts this point beyond dispute.

What then is the law of this case ? It is wholly immaterial whether time was of the essence of the contract between the parties or not, if Ward, before the land was sold and paid for, tendered to Cameron and Johnson the $180, paid out for him, with the interest thereon; they were bound to receive it, and re-convey the title to him. And the proof is clear and conclusive that this was done. When Wilkinson called on Cameron with the money, and demanded a deed, Cameron was ignorant of the inchoate and incomplete contract between Johnson and Spear; Spear had full notice of Ward's equity before he paid out his money—indeed, he knew of it before he and Johnson rushed with such suspicious haste into the trade. Why did he not retract ? Had the sale been consummated, and a joint deed executed, his conscience, we apprehend, would be affected by the pre-existing equity between Ward and his vendors. Such, however, is not his position. His bargain was unfinished when the re-payment was tendered, and consequently the trust deed, under which he was taking his title was *functus officio* and spent.

It is quite unnecessary, therefore, to enter into a critical examination of the charges complained of. This broad view overrides them all, and settles the rights of the parties upon the stable foundations of justice and good faith.

We see nothing in the verdict contrary to law or evidence, or the charge of the Court. It is in accordance both with the facts and the law, and should not be disturbed.

As to the instruction of the Court respecting the capacity of the agent, we see nothing to object to. He seems, drunk or sober, to have understood and executed with skill and fidelity, the business intrusted to his care. And as his principal does not repudiate his acts, there is no reason why the other parties should.

Judgment affirmed.